UNION INDEMNITY Co. *et al. v.* WINEMAN *et al.*[*]

(Division A. June 15, 1926.)

[108 So. 796. No. 25507.]

JOINT ADVENTURES.

Under tripartite contract, wherein plaintiff agreed with contractor and subcontractor to furnish dredging machine in consideration of percentage of profits after payment of operating expenses, recovery cannot be had against drainage district or surety on contractor's bond, where it was not contended that operating expenses had not been paid or that there were any net profits from joint adventure.

[*]Corpus Juris-Cyc References: Joint Adventures, 33CJ, p. 861, n. 48 New.

APPEAL from chancery court of Bolivar county.
HON. C. L. LOMAX, Chancellor.

Bill by A. V. Wineman and others against the Union Indemnity Company, the Clear Creek Drainage District, and others. Decree overruling demurrers by defendants named, and they appeal. Reversed and remanded.

*George Butler* for appellants.

I. *J. B. Arpen Dredging Company was not within and covered by the terms of the bond.* J. B. Arpen Dredging Company was not a laborer and not a materialman. It did not claim as such. The wages and claims of all laborers have been paid, and the wages and claims of all materialmen have been paid. See chapter 217, Laws of 1918.
· The money for excavation done under this contract was to be placed in a joint account, out of which, first, was to be paid the operating expenses for the month, including the wages of laborers. No contention is made that the money was not placed in the joint account, or that the laborers and other expenses of operation under that contract were not actually paid out of the fund. This fund did not belong to J. B. Arpen Dredging Company, but was a fund jointly dedicated by all parties to the agreement for the payment of laborers' claims and operating costs of the machine.

The amount to be received by J. B. Arpen Dredging Company after the payment of the operating expenses from the special fund was for the use of their machine. In other words, these parties got together and agreed that the principal contractor would furnish certain yardage; the sub-contractor a certain yardage; and J. B. Arpen Dredging Company a certain machine; that a fund would be provided to take care of laborers' claims and other operating expenses; and instead of each drawing a stipulated sum on their capital or property dedicated to the joint enterprise, that they would share in the profits, if any, arising out of the operation. This proposition was to be contingent. The original contractor was to get nothing for procuring the original contract; the sub-contractor was to get nothing for relinquishing its rights under the sub-contract; and J. B. Arpen Dredging Company was to get nothing for the use of its machine, unless there was a net profit—a profit after all operating expenses had been paid.

The basis of complainant's claim is compensation for the use of their machine. The authorities are practically uniform to the effect that the claims of those furnishing equipment to contractors for doing work are not protected by statutory bonds similar to that required by chapter 217, Laws of 1918. Such equipment does not fall within the definition of laborers or materialmen. The statute was not intended for the benefit of a contractor who takes the chance of profit or loss. It was intended to apply to laborers who work for a fixed price for their labor, or a materialman who furnishes material for a stipulated sum. *Winder* v. *Caldwell*, 14 How. 434, 14 L. Ed. 432; *Rogers* v. *Dexter & P. R. Co.* (Me.), 21 L. R. A. 528.

That bonds of this character and lien statutes do not afford protection to those furnishing equipment to the contractor necessarily employed in the performance of the contract would seem to be settled by such cases as *Woods Curtis & Co.* v. *El Dorado Lbr. Co.*, 94 Pac. 877, 17 L. R. A. (N. S.) 585 and note; *Standard Boiler Works* v. *Nat'l Surety Co.*, 127 Pac. 573, 43 L. R. A. (N. S.) 162 and notes; and *U. S. Rubber Co.* v. *Washington Engineering Co.*, 149 Pac. 706, L. R. A. 1915-F 951 and notes.

That the suppliers of such equipment are not laborers or those who furnished labor under statutory lien statutes or bonds similar to that alleged to have been given in this case, are demonstrated by such cases as *Rogers* v. *Dexter & Piscatoquis R. Co.*, 21 L. R. A. 598; *Woods Curtis & Co.* v. *El Dorado Lbr. Co.*, 94 Pac. 877, 16 L. R. A. (N. S.) 584; *Indianapolis Northern Traction Co.* v. *Brennan*, 87 N. E. 215, 30 L. R. A. (N. S.) 85, and notes to those cases.

Indeed, our own court in principle has settled this question. The Code of 1880, relating to materialmen's liens, was substantially the same as the Code of 1906. The statute makes every building, etc., liable ''for the debt contracted and owing for labor done or materials furnished about the erection . . . or repairs thereof.''

*Rivers* v. *Mulholland,* 62 Miss. 766; *Lake* v. *Brannin,* 90 Miss. 737; *Williams* v. *Electric Light Co.,* 98 Miss. 468; *Tabb* v. *Mollette,* 102 A. S. R. 84. Chapter 217, Laws of 1918, is no broader than section 3058, Code of 1906, and the statute under review in the Mississippi cases cited above.

We have shown that J. B. Arpen Dredging Company was in reality furnishing equipment for which it was to receive a certain net per cent of the net profits arising out of the contract; that ninety per cent of these profits were to be placed in a special account and used to pay operating costs. There is no allegation that this ninety per cent was not placed in the special account and we have pointed out that the claim in this case is not that of the laborers who worked about the machine, but in reality is that of the company for the alleged net profits, as compensation for the use of the machine.

It is manifest that the complainant could not maintain an action for the balance due for this work against the district, for the reason that it does not own the monies due, but only an interest therein; nor could it recover from Clark-Dennison Company, the original contractor, for the same reason, and for the added reason that under the contract all monies earned were to be paid into a joint account, from which there should be deducted operating expenses before any division was made among the three parties to the agreement. And Clark-Dennison Company nowhere contracts to pay anything to complainant; all money is to be paid by the district.

And if no right of action for the balance earned in doing the excavation work is in the complainant as against Clark-Dennison Company, the original contractor, it follows that there has been no breach of the bond, for the bond is subject only to the obligation that the contractor shall promptly make payments to all persons furnishing labor or material under said contract. This case is controlled in principle by *Hardaway & Prowell* v. *Nat'l Surety Co.,* 211 U. S. 552, 53 L. Ed. 321.

The suit in its last analysis is for profits and there were no profits. The contract does not contain a promise to pay for the use of the machine in any event. The promise is restricted to a payment for the use of the machine out of the net profits from a particular operation. Under no view of the case under the allegations of this bill of complaint are complainants entitled to recover.

*Sillers & Pearson,* also, for appellants.

A close examination of the original contract and amendments thereto and the bond executed by the contractor will show there is no authority for the payment of any funds by the district except to the original contractor; furthermore, that, under section 7, it is specifically provided that even in the event of the letting of a sub-contract by the original contractor, it should in no wise affect the relations between the original contractor and the district.

It is apparent that this is an attempt on the part of the appellees to enforce liens or claims of sub-contractors, materialmen or laborers against the drainage district—a public body and a sub-division of the state—for labor and materials furnished on public work which under the authorities, are not recoverable at law or in equity as against the district; but their only resort is to the bond furnished in the case.

The bill and exhibits fail to state a cause of action against these appellants. The chancellor erred in not sustaining the demurrer.

*Watson & Jayne,* for appellees.

The contention of appellants that the J. B. Arpen Dredging Company was not a laborer and not a materialman goes to the heart of the question involved in this case. There are authorities for this contention as shown in the able briefs of appellants, but we think both the

weight of authority and strength of reasoning lie with the cases cited in this brief construing sub-contractors to be entitled to the benefits of statutes of the same class as the Mississippi statute involved in this case.

We do not agree that *Rivers* v. *Mulholland,* 62 Miss. 766, is decisive of the instant case, either in effect or principle. The Mississippi statute construed in that case was wholly unlike the one involved here. A like observation is made of *Lake* v. *Brannin,* 90 Miss. 737; and *Williams* v. *Electric Light Co.,* 98 Miss. 468.

The object which the legislature evidently had in view in enacting this statute was to provide relief for persons who furnished labor and materials as well as to persons who labored on the job. Such is the construction that appellees place upon section 1, chapter 217, Laws of 1918.

Appellees fail to see by what right the original contractor, Clark-Dennison Company and their surety, the Union Indemnity Company, have to defend on the ground that the parties to Exhibit "E," the sub-contractors in the instant case of Clark-Dennison Company, were to be paid for the work done on a percentage based on the nettage, as therein specified.

Upon Clark-Dennison Company's abandoning the work, it was the duty of the Union Indemnity Company to complete the work itself or pay what it cost to do the work up to the limit of the bond. To have accomplished this the surety company would either have to do the work itself or sub-let it. When its principal preferred to sub-let it, the Union Indemnity Company was bound thereby and all the work that appellees did under the subcontract sued on in this case redounded to the benefit of the original contractor or his surety, thereby effecting a part performance of the original contract in work done nearly up to the requirements of the original contract; all of which, as already stated, redounded to the. benefit of the Union Indemnity Company by reducing the *quantum* of its liability to the drainage district to the extent

of the major portion of the cubic yardage of earth to be removed.

Appellees do not think that *Hardaway* v. *National Surety Co.*, 211 U. S. 552, 53 L. Ed. 321, applies in the instant case for the reason that there the suit was brought by persons who, in view of the financial embarrassment of a public contractor undertook to superintend the completion of a public work and to furnish the necessary funds for which they were to be paid by an assignment of reserved funds in the hands of the government and by checks or payments under the original contract are not sub-contractors furnishing labor or material for the fulfillment of such original contract. In other words, the suit there was by one who had furnished money for the completion of the work and not by a sub-contractor who had undertaken to furnish the labor and material for the doing of the work.

In the instant case there is no question of liens or priorities of liens, but the determining question is the liability on the guaranty bond.

*Geo. Butler,* in reply, for appellants.

Counsel does not take issue with our analysis and interpretation of the tripartite agreement under which this dredging machine was used. There is no contention here made that the amount sued for is anything other than a sum claimed to be due for the alleged use of certain equipment belonging to J. B. Arpen Dredging Company, under the tripartite agreement. It is not denied that all of those who labored about the machine and in digging the canal have been paid. It may be taken as admitted that all materialmen have been paid and that all laborers have been paid, unless it shall be said that the claim for the use of this machine, in consideration of a stipulated part of the profits, if any, from the common enterprise constitutes such labor or material used "therein"—the

work or the supplying of labor or material "therein" within the meaning of the statute involved.

An analysis of chapter 217, Laws of 1918, shows that it was not intended to require bonds given under that act to secure payment to persons supplying the contractor "with labor and material" in the prosecution of the work provided for in such contract," as does the Federal statute, as pointed out in the cases relied upon by appellee.

On the other hand, that act provides that any person "who has furnished labor or material used therein and wherefor payment has not been made" shall have the right to be made a party to any action instituted on the bond.

It would seem clear from this statute that it is intended to protect those supplying labor and material for the work "used therein," that is used in the work. This statute is no broader than section 3058, Code of 1906 (section 2419, Hemingway's Code); it is no broader than section 3075, Code of 1906 (section 2335, Hemingway's Code). It certainly would not be held under section 3058 or section 3075, Code of 1906, that the building or carriage would be liable for the purchase price, rental or repair of the builders or carriageman's plant and equipment used in the construction or repair of the building or carriage.

This court has not had occasion to deal with the question of whether or not debts for equipment used by the contractor, builder or repairman in doing the work under the lien statutes or chapter 217, Laws of 1918, are within their protection, but it has had occasion to deal with what class of persons fall within the definition of laborers under these statutes and in the case of *Williams* v. *Electric Light Co.*, 98 Miss. 468, it is expressly held that a superintendent of construction whose main duties are to employ, pay off and discharge laborers, and supervise and direct them while at work is not a "laborer" within the meaning of the material lien statute.

On the other hand, the United States courts in construing the Federal statute, which is much broader than the state statute and which provides for the giving of a bond by the contractor to "promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract," have held that the broad terms of this statute were designed to protect labor and material used in the prosecution of the work and not so closely associated with the building or structure as to be said to be "used therein," or to be supplied "therein."

Our court in *Watkins et al.* v. *U. S. F. & G. Co.*, 138 Miss. 388, has stated that the "predominant number of decisions under state laws does not extend under protecting influence of the statute to claims of this character." Furthermore, when properly analyzed, it is not believed that *U. S.* v. *Illinois Surety Co.*, 236 Fed. 653, affirmed as *Illinois Surety Co.* v. *John Davis Co.*, 244 U. S. 375, 61 L. Ed. 1206, cited by opposing counsel, justifies the conclusion that under the broad terms of the Federal statute the bond is liable for the contractor's plant and equipment.

It will be seen from the decision of the circuit court of appeals in the Illinois Surety Company case, predicated upon the opinion of the court in *Surety Co.* v. *Lawrenceville Cement Co.*, 110 Fed. 717, that the opinion of the supreme court in that case is predicated upon *Title Guaranty & T. Co.* v. *Crane & Co., supra,* and that the holding of the court in *Title Guaranty & T. Co.* v. *Crane,* is predicated upon the opinion of Judge Putnam in the *American Surety Company case,* 110 Fed. 717. It then becomes important to inquire what was the holding of the court in the American Surety Company case. The opinion in that case made a clear discrimination between labor and materials consumed in the work or consumed in connection therewith and labor and materials made use of in furnishing the so-called contractor's plant. The court insists on the propriety of this distinction, for otherwise,

a bond given under the statute for a small contract might substantially be exhausted in protecting the purchase money of the plant and leave the laborers without protection. See 110 Fed. 721.

Argued orally by *Geo. Butler,* for appellants, and *H. C. Watson,* for appellees.

Cook, J., delivered the opinion of the court.

The J. B. Arpen Dredging Company and certain individuals suing as a creditor's committee of the partnership of J. B. Arpen Dredging Company, and A. V. Wineman, suing as an assignee of the said J. B. Arpen Dredging Company, filed their bill of complaint against the Clark-Dennison Company, the Union Indemnity Company, the Edward Bros. Dredging Company, and the Clear Creek drainage district. To this bill the Union Indemnity Company and the drainage district filed demurrers. These demurrers were overruled, and this appeal was granted to settle the principles of the case.

From the charges of the bill of complaint and the exhibits thereto, the following facts appear:

Prior to May 17, 1921, the Clear Creek drainage district was organized for the purpose of constructing a drainage system for the territory within the district. On September 28, 1921, the Clark-Dennison Company, a partnership, was awarded a contract by which it agreed to do all work, furnish all tools, labor, etc., necessary for the excavation and construction of the drainage system shown by the plans and specifications at a price of thirteen and ninety-five-hundredths cents per cubic yard of excavation for floating dredge work and twenty-three and nine-tenths cents per cubic yard for dry land excavation. As provided by the specifications and the form of contract attached thereto, the Clark-Dennison Company as principal, and the Union Indemnity Company as surety, entered into bond in favor of the district in the

sum of two hundred three thousand dollars, conditioned that "Clark-Dennison Company shall faithfully perform said work according to the plans, specifications, profiles and estimates of the engineer, and shall complete the work within the time and in the manner specified in said contract."

Shortly after the contract was awarded to Clark-Dennison Company, that company sub-let to Edwards Bros. Dredging Company certain of the ditches which it had contracted to dig, aggregating one hundred ninety-eight thousand two hundred six cubic yards of dirt. Shortly thereafter there was a contract entered into by and between Clark-Dennison Company, Edwards Bros. Dredging Company, and J. B. Arpen Dredging Company, in which is recited the making of the contract between Clark-Dennison Company and the drainage district and the sub-letting of one hundred ninety-eight thousand two hundred six cubic yards of dirt by the Clark-Dennison Company, and wherein it was agreed that the J. B. Arpen Dredging Company would furnish a certain dredging machine known as Cross Walker machine No. 5, to do a large part of the excavation work covered by the plans and specifications, including that theretofore sublet to Edwards Bros. Dredging Company. This tripartite contract made full provisions for all operating expenses, including therein insurance on the said Cross Walker machine, liability insurance, overhead expense of not exceeding five hundred dollars per month, repairs on said machine No. 5, and the sum of seven hundred dollars on cost of making surety bond, and also provided that the J. B. Arpen Dredging Company should have full charge of the operation of all work to be done and performed under the terms of the contract, and should keep an accurate account of the cost of the work to be done and performed under the terms of the contract, and also further provided that any one of the three parties thereto should, at any time during the life of the contract, have the right to inspect and audit the accounts and costs of

operation under the contract, and to submit in writing his or their objections thereto. This contract also contained the following provisions:

"(5)    It is further agreed and understood by all parties hereto that party of the third part for and in consideration of the use of their Cross Walker machine No. 5, now located at Pace, Miss., is to receive the sum of forty-one and two-thirds per cent. of the net profits arising from the work to be performed under the terms and provisions of this contract.

"(6)    It is further agreed and understood that party of the second part for and in consideration of his subcontract with party of the first part for the removal of one hundred ninety-eight thousand two hundred five cubic yards, being included in the yardage to be removed under this contract, is to receive the sum of thirty-three and one-third per cent. of the net profits arising from all the work performed under the terms and provisions of this contract.

"(7)    It is further agreed and understood that party of the first part, for and in consideration of the yardage to be moved under the terms and provisions of this contract and the further consideration of their having made bond in said work and having the original contract to do said work, is to receive twenty-five per cent. of the net profits arising from the work to be performed under the terms and provisions of this contract."

"(12)    It is further agreed and understood by all parties hereto that all money received from the operation of the work under this contract from the Clear Creek drainage district is to be placed in a joint account in the Bolivar County Bank of Rosedale, Miss., and to be known and styled as 'J. B. Arpen account machine No. 5,' out of which account the operating expense for the month is to be paid, and ninety per cent. of the nettage remaining in said joint account is to be distributed monthly according to paragraphs 5, 6, and 7 of this contract, and

the remaining ten per cent. is to be held as a surplus until completion of said work.

"(13)   It is further agreed and understood by all parties hereto that after completion of said work according to the engineer's plans and specifications and party of the first part's contract with the Clear Creek drainage district, the twenty per cent. retention money withheld by the district each month from the monthly estimates of machine No. 5, known and styled as retain percentage, as well as any surplus remaining in the joint amount, is to be distributed according to paragraphs 5, 6, and 7 of this contract."

It was also provided that:

The "work to be performed under the terms of this contract shall bear its *pro rata* part of the bond discount occasioned by party of the first part's contract to purchase from the Clear Creek drainage district bonds of said district at par and accrued interest, said discount amounting to fifteen points on each bond, the bond issue being two hundred forty thousand dollars.   When the said discount is reduced to price per cubic yard each yard of dirt moved in the district should bear amounts to two and fifty-three-hundredths cents per cubic yard.   The sum is to be included as operating expense under this contract, and is to be deducted as cost of operation."

The bill of complaint set forth the foregoing facts and contracts, and charged that under the provisions of the Mississippi statutes then in force the bond executed by the Clark-Dennison Company with the appellant Union. Indemnity Company, as surety, partook of a dual nature in the obligations and liabilities, in that:

"(a)   It guaranteed the performance of the original contract on the part of the appellant, the Clark-Dennison Company; and (b) with the additional obligation that the contractor should promptly make payments to all persons supplying labor or materials for the work."

The bill further alleged that the appellee J. B. Arpen Dredging Company entered upon the work required of

it by the terms of this tripartite contract and performed its part thereof, doing all the excavation work required of it in the manner thereby required, and that it furnished the labor and material to do said work, and excavated and moved a total of five hundred twelve thousand seven hundred sixty cubic yards of earth, for which it was paid, except the sum of thirteen thousand five hundred seventy-seven dollars and sixteen cents, which amount is alleged to be still owing for said work done and labor and material furnished.

The bill further alleged that, by the terms of a written contract dated February 19, 1920, and a deed of trust dated February 28, 1920, all of the balance, except about five hundred dollars owing to appellee J. B. Arpen Dredging Company, belongs in equity to the appellee A. V. Wineman; that the appellee Arpen Dredging Company had placed itself on the hands of a creditor's committee; and that it still owed the appellee, A. V. Wineman, about twenty thousand dollars for money advanced to it in financing the work under the contract.

It was further charged that, while the bond signed by the appellant Union Indemnity Company did not carry therein an obligation to pay all sums owing to any and all persons for labor and material furnished in and about the construction work let under the contract, for the performance of which the bond was indemnity, still, inasmuch as the statute then controlling, to-wit, chapter 217, Laws of 1918, required such obligation of any surety making such bond, the law and equity will treat that obligation as written into the face of the bond.

The bill of complaint was amended so as to charge that the appellant drainage district negligently failed to require of the appellant contractor, Clark-Dennison Company, and its surety, the Union Indemnity Company, a bond in the form and with the conditions required by the statute, with the obligations to pay all persons supplying labor or materials for the work called for by the

contract, and that the Clark-Dennison Company had abandoned the contract before the completion thereof.

The prayer of the bill as amended was for a decree against the Union Indemnity Company on its bond for all sums owing appellees, or either of them, and that, if necessary, the bond be reformed so as to make it comply with the requirements of the statute, in making it liable to persons furnishing labor and materials that went into the work, and also for a decree against the appellant drainage district for the amount sued for, as damage on account of the district negligently failing to require the contractor, Clark-Dennison Company, and the surety, to execute a bond in the form and with the conditions required by law.

R. H. Williams, trustee in bankruptcy of Edwards Bros. Dredging Company, filed a bill of intervention in the above proceeding, reiterating and adopting the allegations of the original bill of complaint, and claiming that, under the tripartite agreement hereinbefore referred to, they became "entitled to thirty-three and one-third per cent. of the nettage reflected by and arising therefrom under the work there contracted to be done," and alleging that the Edwards Bros. Dredging Company had fulfilled their part of that contract, including specifically the supervision of construction work and furnishing material and labor, which they did in accordance with the terms and stipulations of that agreement, and asserting the right to recover therefor the sum of about eleven thousand dollars, the exact amount to be determined upon an accounting to be had for that purpose. The Clark-Hunt Contracting Company, the successors of the Clark-Dennison Company, filed an answer to the original bill and bill of intervention, while the drainage district and the Union Indemnity Company filed demurrers, and from the order overruling these demurrers this appeal was prosecuted.

There are many interesting questions raised and ably argued by counsel for the respective parties, but we think

the rights of the appellees are based solely upon the tripartite contract hereinbefore set forth, and that a determination of the effect of the provisions of this contract will dispose of this cause.

At the time this tripartite contract was entered into, the Clark-Dennison Company was obligated to excavate within the Clear Creek drainage district one million fourteen thousand one hundred fifty cubic yards of earth, and the Edwards Bros. Dredging Company one hundred ninety-eight thousand two hundred six cubic yards. The appellee J. B. Arpen Dredging Company owned a dredging machine, and it was conceived to be to the interest of all parties to have this machine do a large part of this excavation. Thereupon this contract was entered into, whereby it was agreed that Clark-Dennison Company and Edwards Bros. Dredging Company would turn over to J. B. Arpen Dredging Company the excavating to the amount of seven hundred twenty-three thousand cubic yards, and the Clark-Dennison Company would advance the money necessary to put this machine in first-class condition and to install it on the work. It was agreed that the J. B. Arpen Dredging Company was to have full charge of the work and keep a proper and accurate account of operating expenses. As a part of the operating expenses it was allowed to charge one-third of five hundred dollars as overhead expenses, cost plus ten per cent. for all repairs to the machine, the cost of insurance on the machine, liability insurance, and seven hundred dollars for the cost of making surety bond by Clark-Dennison Company.

It was further agreed that all money received for excavation under this contract was to be placed in a joint account in the Bolivar County Bank, out of which all the operating expenses should first be paid each month. At the end of each month, after the payment of all operating expenses, ninety per cent. of the nettage remaining in this joint account was to be distributed between the three contracting parties in the proportion named in the con-

tract, that is to say, forty-one and two-thirds per cent. to the appellee J. B. Arpen Dredging Company, thirty-three and one-third per cent. to the Edwards Bros. Dredging Company, and twenty-five per cent. to the Clark-Dennison Company. After the completion of the work, the ten per cent. remaining in this joint account, as well as the twenty per cent. retained percentage of this work, was to be distributed to the respective contracting parties in the same proportion. It is not averred or contended that all laborers' claims and other operating expenses of every character have not been paid, or that they were not all paid out of this joint account, so there is nothing remaining as a basis of appellee's claim except compensation for the use of their dredging machine and expected profits. In fact, the contract stipulates that the forty-one and two-thirds per cent. of the net profits of the venture was to be paid to the appellee for the use of its machine, or, in other words, for the use of equipment or plant appropriate for the work. It is not averred or contended that there were any net profits from this joint adventure, or that this joint account was not entirely distributed in accordance with the terms of the contract. The appellee J. B. Arpen Dredging Company put its machine into this joint venture, and by contract expressly stipulated that it should receive as compensation for the use of this machine and for services rendered a fixed proportion of the net profits of the venture. Its rights are measured by the terms of this contract, and upon the averments of this bill we do not think it is entitled to recover anything against either the surety company or the drainage district. The decree of the court below will therefore be reversed and the cause remanded.

*Reversed and remanded.*